| | |
|---|---|
| GRANT A. KYLE and BLUGUISE, LLC, | ) )  ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| KELLY MCDOUGALL; TECHNOLOGY FUSION, LLC; and TEK FUSION GLOBAL, INC., | ) ) ) ) |
| Defendants. | ) |

ORDER

This matter comes before the court on defendants' motion to transfer the case to the Eastern District of Virginia, Newport News Division (DE 5); plaintiffs' motion to remand (DE 9); and defendants' motion to dismiss for failure to join a necessary party, pursuant to Federal Rule of Civil Procedure 12(b)(7) (DE 16). These motions have been fully briefed, and the issues raised are ripe for ruling. For the following reasons, the court denies plaintiffs' motion to remand, grants defendants' motion to transfer, and denies without prejudice defendants' motion to dismiss.

## BACKGROUND

A.   The North Carolina action

Plaintiffs filed the instant action in Wake County Superior Court on March 10, 2014 (the "North Carolina action"), asserting claims for declaratory judgment, breach of contract, breach of implied duty of good faith, unjust enrichment, accounting, tortious interference with contract, and constructive trust. Plaintiff Bluguise, LLC ("Bluguise") is a limited liability company based in

North Carolina that has developed certain computer software (hereinafter the "Software"), through its sole member/manager Grant A. Kyle ("Kyle"). Defendants Technology Fusion, LLC, and Tek Fusion Global, Inc., ("Tek Fusion") are small businesses based in Virginia, owned and managed by Kelly McDougall ("McDougall"), which have used the Software in their business operations.

The factual allegations in the North Carolina action may be summarized as follows. Starting in 2009, plaintiffs entered into an agreement with defendants under which plaintiff created the Software in North Carolina and licensed the Software to defendants for use in defendant's business in Virginia, including by installing and selling the Software to customers. Under the terms of the license agreement, defendants agreed to pay plaintiffs fifty percent (50%) of all revenues received by defendants for each installation or sale of the Software. Plaintiffs also provided separate independent contracting services for defendants. In addition, starting in April 2013, defendants employed plaintiff Kyle for the limited purpose of providing testimony in litigation on behalf of defendant Tek Fusion. In February 2014, defendants claimed ownership over the Software, and demanded that plaintiffs provide the Software to them. Plaintiffs refused to do so, and defendants threatened to sue plaintiffs.

In the North Carolina action, plaintiffs seek a declaratory judgment under North Carolina law that plaintiffs created the software in the course of an independent contractor relationship, and that defendants have no ownership interest in the software. Plaintiffs claim that defendants breached their Software license agreement by selling applications using the Software without paying plaintiffs the agreed-upon share of revenues. On the basis of the same conduct, plaintiffs assert that defendants have breached the implied duty of good faith and fair duty, have been unjustly enriched, and have interfered with plaintiffs' contractual relations. Plaintiffs seek an accounting of all sales involving

2

the Software, and a constructive trust comprised of the Software and all earnings arising from its use. Plaintiffs demand a jury trial and seek monetary damages "in an amount in excess of $25,000," in addition to the declaratory relief.

Defendants removed this action from Wake County Superior Court to this court on April 2, 2014, upon the basis of diversity jurisdiction. In their notice of removal, defendants assert that the true amount in controversy exceeds $75,000.

B.    The Virginia action

On the same date as removal in the North Carolina action, defendants filed a motion to transfer the North Carolina action to the United States District Court for the Eastern District of Virginia, Newport News Division, pursuant to Federal Rule of Civil Procedure 12(b) and 28 U.S.C. §§ 1391, 1404, and 1406. In support of the notice of removal and the motion to transfer, defendants submitted declarations of defendant McDougall, which include allegations and exhibits regarding ongoing litigation between the parties in the Eastern District of Virginia (the "Virginia action").

In the Virginia action, Tek Fusion commenced suit against Kyle, Bluguise, and an additional individual, Edmund D. Zink ("Zink"), in the circuit court for the city of Williamsburg and county of James City, Virginia, on March 11, 2014. Defendants in the Virginia case (who, absent Zink, are the plaintiffs in the present case) removed the complaint to the Eastern District of Virginia, Newport News Division, on the basis of diversity jurisdiction, on March 17, 2014. See TEK Fusion Global, Inc. v. Kyle et al., 4:14-cv-00031-TEM (E.D.Va.).

In the Virginia action, Tek Fusion claims that Kyle, Bluguise, and Zink, conspired to misappropriate confidential information about Tek Fusion, including Tek Fusion's computer source code, during their employment with Tek Fusion. Tek Fusion further claims that Kyle, Bluguise, and

3

Zink interfered with Tek Fusion's existing business relationships.  Tek Fusion seeks a preliminary and permanent injunction restraining them from using confidential information and other data obtained by Kyle and Zink through their employment with Tek Fusion.  Tek Fusion also seeks an accounting of business done and profits made by Kyle, Bluguise, or Zink, as a result of the alleged misappropriation.  Tek Fusion further seeks compensatory and punitive damage in excess of $1,350,000.00.

The facts alleged in the Virginia action include hiring of Kyle, acting through Bluguise, as an independent contractor, to develop certain software for use by Technology Fusion, LLC, and Tek Fusion, in 2010 and 2011, as well as the hiring of Kyle and Zink as full-time employees of Tek Fusion in 2013.  The complaint in the Virginia action details the information technology and data Kyle and Zink allegedly controlled in their positions as Vice President of Engineering and Senior Software Engineer.  The complaint also includes allegations that Kyle and Zink developed certain source code on behalf of Tek Fusion which corresponded to software developed by Kyle and Zink, called "BluMap," which was improved upon while Kyle and Zink were employed with Tek Fusion.  The complaint further suggests that the software developed by Kyle and Zink is instrumental to Tek Fusion's proprietary "mission management software suite named 'Pathfinder.'" (Virginia Compl. ¶ 24).  The complaint states that Tek Fusion is unable to deliver on United States government contracts as a result of actions of Kyle and Zink.

In the Virginia action, the parties consented to having all proceedings and trial conducted by a United States Magistrate Judge, and the matter proceeded to hearing on plaintiff's preliminary injunction motion.  On July 16, 2014, following a hearing, the court granted in part plaintiff's preliminary injunction motion, in part, ordering Kyle and Bluguise to return information technology

4

to Tek Fusion, including "source codes, passwords and any other information that will fix the problems caused by Kyle, and which will allow [Tek Fusion] to properly use the computer systems." TEK Fusion Global, Inc. v. Kyle et al., 4:14-cv-00031-TEM, Preliminary Injunction Order at 2 (E.D.Va., July 16, 2014). The court set the matter for trial on February 17, 2015. Kyle and Bluguise appealed the preliminary injunction order on August 15, 2014.

## DISCUSSION

A.  Motion to Remand

Plaintiffs seek to remand the instant action on the basis that the amount in controversy, for purposes of diversity jurisdiction, does not exceed $75,000. Where removal of a civil action is sought on the basis of diversity jurisdiction, as here, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that the notice of removal may assert the amount in controversy if the initial pleading seeks (i) nonmonetary relief; or (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded. . . ." 28 U.S.C. § 1446(c)(2). "If a complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." Francis v. Allstate Ins. Co., 709 F.3d 362, 367 (4th Cir. 2013); see 28 U.S.C. § 1446(c)(2)(B) (same).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Francis, 709 F.3d at 367 (quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)). In other words, "jurisdiction is to be tested by the value of the object or right to be protected against interference," McNutt v. Gen. Motors Acceptance Corp. of Indiana, 298 U.S. 178, 181, (1936), and

5

that value may be measured by "pecuniary consequence to those involved in the litigation." Thomson v. Gaskill, 315 U.S. 442, 447 (1942); see Gov't Emp. Ins. Co. v. Lally, 327 F.2d 568, 569 (4th Cir. 1964) (same, in context of declaratory judgment action); Griffin v. Red Run Lodge, Inc., 610 F.2d 1198, 1204-05 (4th Cir. 1979) (looking to expenses defendant would incur in complying with injunctive relief).

In this case, the complaint does not allege a specific amount of damages. Rather, it seeks recovery from defendants a sum "in excess of $25,000," on each claim for damages. (Compl. ¶¶ 30, 35, 38, 45). In addition, the complaint seeks declaratory relief regarding the ownership and rights to the Software. (Id. ¶ 25). Therefore, the burden is on defendants to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. For the reasons stated below, defendants have met this burden here.

In support of removal, defendants submitted a declaration of McDougall stating that the Software at issue in the North Carolina action "is the same software at issue in [the Virginia action], wherein [Tek Fusion] claims ownership of the Software." McDougall points to claims in the Virginia action wherein Tek Fusion seeks compensatory damages of $1,000,000.00 due to its inability to access and use the Software that it claims it owns. Plaintiffs, by contrast, offer no evidence showing that the total value of the Software they seek to recover through their claims in the North Carolina action is less than $75,000.00. Indeed, plaintiffs state in their motion to remand that they are "unaware of the actual amount of loss due to Defendants' breach of contract." (DE 10 at 3).

Plaintiffs state, nonetheless, that they "believe[] the amount [in controversy] to be less than $25,000," calculated on the belief that the amount due to Kyle "was $5000 for each [of five]

6

license[s] improperly sold." (DE 10 at 3 & 7). This assertion is insufficient to defeat removal jurisdiction for several reasons. As an initial matter, this assertion is contrary to the complaint itself, which asserts damages "in excess of $25,000." (Compl. ¶¶ 30, 35, 38, 45). Second, statements as to plaintiffs' beliefs regarding the amount of controversy made by counsel in a brief, are not themselves evidence of amount in controversy. In limited circumstances, some courts have recognized that a formal stipulation by a party limiting damages sought may serve to defeat removal jurisdiction. See, e.g., Young v. GE Capital Retail Bank, 5:12-CV-01463, 2013 WL 312876 (S.D.W. Va. Jan. 25, 2013) ("A stipulation that seeks to limit the amount in controversy must be a formal, truly binding, pre-removal stipulation signed by counsel and his/her client explicitly limiting recovery.") (quotations omitted). But, in this case, the unsupported statements in plaintiffs' brief do not meet these requirements for a formal stipulation. Finally, plaintiffs have offered no other evidence to support their contention that the amount in controversy in this case is limited to $25,000.

In addition, apart from the amount in controversy based upon plaintiffs' damages claims, defendants have demonstrated by a preponderance of the evidence that the amount of controversy regarding the declaratory judgment claim exceeds $75,000. In his declaration, McDougall explains the alleged relationship between the Software at issue in the North Carolina declaratory judgment claim and Tek Fusion's business operations, describing the allegedly costly consequences that would result from a declaratory judgment granting ownership of the Software to Kyle and Bluguise:

> The Software consists of source code which makes up various components of a proprietary mission management software suite named "Pathfinder." Pathfinder is a highly complex and specialized end-product, as are each of the components and the supporting source code. [Tek Fusion] markets and sells Pathfinder to current and prospective clients under high-dollar amount contracts, which greatly exceed $75,000. The Software is absolutely essential to the function of Pathfinder. Therefore, ownership of the Software necessarily impacts the viability of Pathfinder or any other similar end-product.

7

(DE 1-3 at ¶ 5). Plaintiff has not offered any evidence to the contrary or suggesting that Tek Fusion will not be impacted in this manner by a declaratory judgment as to ownership of the Software. Accordingly, defendants have demonstrated that "the value of the object of the litigation" exceeds $75,000, Francis, 709 F.3d at 367, and that removal on the basis of diversity jurisdiction is proper. Therefore, plaintiff's motion to remand will be denied.

B.   Motion to Transfer

Defendants move to transfer this case to the Eastern District of Virginia, Newport News Division. As pertinent here, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "[A] district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations," by "weigh[ing] the relevant factors and decid[ing] whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas, 134 S.Ct. 568, 581 (2013) (quoting 28 U.S.C. § 1404(a)).

"Factors relating to the parties' private interests include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" Id. at 581 n.6 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n. 6 (1981)). "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the

8

trial of a diversity case in a forum that is at home with the law.'" Id. (quoting Piper, 454 U.S. at 241 n.6). "The Court must also give some weight to the plaintiffs' choice of forum." Id. (citing Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955)).

This court previously has recognized that "[a] motion to transfer demands a holistic analysis." Memsys, Inc. v. Act Tech. Seed Fund, L.L.C., 5:09-CV-516-FL, 2010 WL 2402846 * 2 (E.D.N.C. June 14, 2010). "[M]uch necessarily must turn on the particular facts of each case, and the trial court must consider and balance all the relevant factors to determine whether or not the litigation would proceed more conveniently and the interests of justice be better served by transfer to a different forum." Id. (quoting Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 15 Federal Practice & Procedure Jurisdiction § 3847 (3d ed.)). Ultimately, "[t]he question of transfer [is] a matter resting in the sound discretion of the District Judge." S. Ry. Co. v. Madden, 235 F.2d 198, 201 (4th Cir. 1956).

In this case, the pendency of the Virginia action is a significant circumstance impacting the court's consideration of both public interest factors and private interest factors. Indeed, courts in this Circuit have recognized that "[w]hen related actions are pending in the transferee forum, the interest of justice is generally thought to weigh heavily in favor of transfer." Samsung Electronics Co., Ltd. v. Rambus, Inc., 386 F. Supp. 2d 708, 721 (E.D. Va. 2005) (internal quotations omitted); see Int'l Tel. & Tel. Corp. v. Gen. Tel. & Electronics Corp., 527 F.2d 1162, 1164 (4th Cir. 1975) (holding that "[j]udicial efficiency and economy suggest a transfer" in the event of two cases pending in two different district courts); 17-111 Moore's Federal Practice - Civil § 111.13[1][o] ("The fact that a related action is pending in the proposed transferee district is an important consideration that can override plaintiff's choice of forum . . . even though actual consolidation of

9

the actions may not be possible."). Although the claims in the North Carolina action are much more limited than those asserted in the Virginia action, both cases involve related issues arising from the creation, ownership, and use of the Software in McDougall's businesses, and the scope and extent of contractual agreements and employment agreements involving Kyle and Bluguise. Where these issues are already in process of being litigated in the Virginia action, including through hearing on preliminary injunction, now completed and on appeal, judicial efficiency and economy weigh in favor of transfer.

Although plaintiff notes that the Virginia action was filed one day after the North Carolina action, thus suggesting favor to the North Carolina action as first-filed, it is nonetheless relevant to transfer that the Virginia action has advanced quickly. Judicial proceedings already taking place in Virginia weigh in favor of transfer to that court, which may be more familiar with facts and evidence underlying the parties' complex relationships. While the court does not find analysis of "court congestion" to be pertinent here, where both districts resolve a high volume of motions and cases per year, it is notable that the parties in the Virginia action uniformly consented to trial of the case by magistrate judge, as this may have further impacted the availability of judicial resources in that case.

The pendency of the Virginia action also impacts private interest factors. Where plaintiffs in the North Carolina action have already appeared, themselves removed the case to the Eastern District of Virginia, and attended a preliminary injunction hearing at which evidence was presented and defendant was present in person, with counsel, this also tends to show the ability of Kyle and Bluguise to resolve in the transferee district "practical problems that make trial of a case easy, expeditious and inexpensive." Atl Marine, 134 S.Ct. at 581 n.6. Furthermore, in contrast to some

cases involving a transfer of venue across the country, this case involves transfer of venue to a district and division directly adjacent to this district, further minimizing inconvenience as a factor in the venue analysis. Cf. Parham v. Weave Corp., 323 F.Supp.2d 670 (M.D.N.C. 2004) (transferring from North Carolina to New Jersey); Triad Int'l Maintenance Corp. v. Aim Aviation, Inc., 473 F.Supp.2d 666, 670 (M.D.N.C. 2006) (declining transfer from North Carolina to Washington).

Also weighing in favor of transfer is the location of defendants in the Eastern District of Virginia, and the fact of plaintiffs alleged long-standing working relationship with defendants, including employment in Virginia. Although plaintiffs assert that many components of the Software used by defendants are physically maintained on Bluguise's servers in Raleigh, Kyle states in his declaration that most recently in January 2014 an access point was installed to allow access from defendants' business location in Virginia. (DE 21-1 at ¶¶ 5-6). In addition, defendant's employee, Mike McIntire, shut down that access point in February 2014, the same time when Kyle was informed that defendants allegedly "had breached the terms of their agreement." (Id. at 7; Compl. ¶17). Moreover, plaintiffs allege in their complaint that defendants have sold applications in the course of their business using the Software and failed to pay plaintiffs for such sales. (Compl. ¶ 29). Thus, critical actions regarding the breach of agreement, as well as actions involving an access point to the Software, took place in Virginia.

Moreover, demonstrating a potential factual dispute as to the location of the Software, the declaration of McDougall asserts, consistent with the allegations in the Virginia complaint, that Kyle resided in Virginia while employed with Tek Fusion, and the "Software was stored on [Tek Fusion's] computer network servers located in Williamsburg, Virginia." (DE 6-3 at ¶¶ 12 & 15). In addition, McDougall asserts that "all payments made to Bluguise were made from [Tek Fusion's]

11

offices in Williamsburg, Virginia, and "[d]efendant's witnesses who are conversant with the logistics and timing of such payments, and any reason such payments were discontinued, as alleged in the [North Carolina] Complaint, are located in Williamsburg, Virginia." (Id. at ¶17).

Plaintiff asserts that venue is preferable in North Carolina, because McIntire is a key witness in this matter and McIntire resides in Fayetteville, North Carolina, within this district. Plaintiffs express concern that they will not be able to compel his testimony because he lives outside the 100 mile radius for a witness subpoena. The court, however, finds this concern unfounded, where McIntire is an employee of defendants, and defendants have identified McIntire as a potential witness on their behalf. Specifically, defendants identify McIntire, along with an accountant and project manager, in addition to Kelly McDougall and Mary McDougall, all as potential witnesses who work out of offices located in Williamsburg, Virginia. (DE 6-3 at 4). It is further noteworthy that, at the preliminary injunction hearing in the Virginia action, on July 7, 2014, Tek Fusion presented McIntire as a testifying witness. TEK Fusion Global, Inc. v. Kyle et al., 4:14-cv-00031-TEM, Minute Entry with Witness and Exhibit List for Motion Hearing at 2 (E.D.Va., July 8, 2014).

In sum, on the basis of this record, the court finds that the instant case could originally have been brought in the Eastern District of Virginia. While the court recognizes the weight the court must give to plaintiffs' original choice of venue and the practical consequences of requiring plaintiffs to litigate this matter in the Eastern District of Virginia, in light of all the above circumstances, transfer of venue is in the interest of justice and will serve the convenience of the parties and witnesses, particularly given the pendency of the Virginia action. Therefore, the court will allow defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a).

12

C.  Motion to Dismiss

Defendants move to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(7), on the basis that plaintiffs failed to join Zink as a necessary party. Where the court has allowed the transfer of venue to the Eastern District of Virginia, the court leaves to that court resolution of the motion to dismiss, provided it remains applicable upon transfer. Accordingly, the court will deny without prejudice defendants' motion to dismiss.

## CONCLUSION

Based on the foregoing, defendants' motion to transfer (DE 5) is GRANTED, plaintiffs' motion to remand (DE 9) is DENIED, and defendants' motion to dismiss for failure to join a necessary party (DE 16) is DENIED WITHOUT PREJUDICE. It is therefore ORDERED that this action is hereby TRANSFERRED to the United States District Court for the Eastern District of Virginia. The clerk is DIRECTED to send a certified copy of this order together with the case file to the Clerk of Court for the Eastern District of Virginia, Newport News Division.

SO ORDERED, this the 23rd day of September, 2014.

*/s/ Louise W. Flanagan*
LOUISE W. FLANAGAN
United States District Judge